The PEOPLE of the State of Colorado, In the Interest of A.E.L. and K.C–M., Children,

Upon the Petition of the Denver Department of Human Services, Petitioner–Appellee,

and

Concerning M.E.C., Respondent–Appellant.

No. 07CA1169.

Colorado Court of Appeals, Div. II.

March 6, 2008.

David R. Fine, City Attorney, Laura Grzetic Eibsen, Assistant City Attorney, Lori Weiser, Assistant City Attorney, Denver, Colorado, for Petitioner–Appellee.

Jeffrey R. Edelman, P.C., Jeffrey R. Edelman, Parker, Colorado, for Respondent–Appellant.

Opinion by Judge ROTHENBERG.

M.E.C. (mother) appeals from the judgment entered on a jury verdict adjudicating her children, A.E.L. and K.C–M., dependent and neglected. We dismiss the appeal in part and otherwise affirm the judgment.

In March 2007, mother's live-in boyfriend was arrested on an outstanding warrant, and his probation officer requested that the police perform a welfare check of the home because of concerns that drugs were there. During the welfare check, the police found pipes and a powdery substance in the home which were taken to the police station and eventually destroyed. The powdery substance was never tested and could not be positively identified as an illegal substance.

Mother also signed a safety plan, agreeing that her son would remain with her and her daughter would live with her father. However, when it appeared that mother was no longer willing to comply with the safety plan, an emergency protective order was entered granting temporary legal custody of both children to the Denver Department of Human Services, and they were placed with their respective biological fathers. The fathers were later granted temporary custody of the children, with supervision by the department.

In April 2007, a detention hearing was held before a magistrate, who ruled that the emergency removal of the children was justified based on concerns regarding their safety and welfare. On review of the magistrate's order, the juvenile court concluded the issues arising from the detention hearing were moot for two reasons. First, a detention hearing was not required by statute, because the children were placed with a parent and not in a shelter. Second, by the time of the juvenile court's review, a jury trial had been conducted, and the two children had already been adjudicated dependent and neglected as to mother.

In June 2007, the dispositional report was adopted by the juvenile court with modifications.

## I.

■ Mother asserts various procedural errors arising from the March 2007 order awarding temporary legal custody to the department and the April 2007 detention order sustaining the emergency removal of the children. We dismiss this part of her appeal.

■ Orders entered during the temporary protective or shelter stage of a dependency and neglect proceeding are interim orders pending a final factual determination of the allegations in the dependency or neglect petition. *People in Interest of M.W.*, 140 P.3d 231, 233 (Colo.App.2006). Because they are not final orders subject to appeal, review of such orders may only be sought pursuant to C.A.R. 21. *See id.*

Thus, we lack jurisdiction to address the issues that mother raises as to the March and April 2007 orders. We dismiss that part of her appeal and only address the issues over which we have jurisdiction, namely, the alleged errors arising from the dependency and neglect adjudication.

## II.

■ Mother next contends the juvenile court erred in denying her motion to suppress evidence of the pipes and the powdery substance found in the home by the police during the welfare check. She asserts that this evidence was very prejudicial because, even though the powdery substance was not tested and positively identified, a police officer was permitted to give his opinion that the substance was methamphetamine. We perceive no error by the juvenile court in denying her motion to suppress.

■ The exclusionary rule is a judicially created remedy intended to deter illegal police conduct by excluding evidence that is obtained in violation of an accused person's Fourth Amendment rights. The application of the exclusionary rule to dependency and neglect proceedings appears to be an issue of first impression in Colorado, but courts in several other jurisdictions have concluded the exclusionary rule does not apply to dependency and neglect petitions. *See, e.g., In re Christopher B.*, 82 Cal.App.3d 608, 147 Cal.Rptr. 390, 394 (1978) (concluding the potential harm to children in remaining in an unhealthy environment outweighs any deterrent effect that would result from suppressing evidence); *In re Corey P.*, 269 Neb. 925, 697 N.W.2d 647, 655 (2005) (any possible benefits of the exclusionary rule do not justify the costly result in a juvenile proceeding of a possible erroneous conclusion that there has been no abuse or neglect, leaving innocent children in unhealthy or compromising circumstances); *State ex rel. Children, Youth & Families Dep't v. Michael T.*, 143 N.M. 75, 172 P.3d 1287, 1290 (Ct.App.2007) (because the nature of an abuse and neglect proceeding is to protect the interests and well-being of the children, the purposes of the exclusionary rule would not be advanced if the evidence is suppressed); *In re Diane P.*, 110 A.D.2d 354, 494 N.Y.S.2d 881, 884 (1985) (concluding state's interest in protecting and promoting the best interests and safety of children far outweighs the rule's deterrent value); *State in Interest of A.R. v. C.R.*, 982 P.2d 73, 78–79 (Utah 1999) (rejecting argument that child protection proceedings are quasi-criminal in nature and concluding that deterrent effect of the exclusionary rule is far outweighed by the need to provide for the safety and health of children in peril); Marjorie A. Shields, Annotation, *Admissibility, in Civil Proceeding, of Evidence Obtained Through Unlawful Search and Seizure*, 105 A.L.R.5th 1 (2003) (collecting state cases).

Further, in an employment context, the Colorado Supreme Court set forth a balancing test for applying the exclusionary rule in civil cases. In *Ahart v. Colorado Department of Corrections*, 964 P.2d 517 (Colo. 1998), an employee of the Department of Corrections (DOC) was suspected of using illegal drugs and ordered to take a drug test. He tested positive for marijuana, and his employment was terminated. He challenged his termination at an administrative hearing, contending there was no reasonable suspicion to justify the drug test, and therefore, the results of the test should be excluded. The ALJ found that the DOC lacked reasonable

suspicion to order Ahart to submit to the test, but ruled that "there was no basis for applying the exclusionary rule to exclude the results of the drug tests because the benefits of applying the rule did not outweigh the costs." *Id.* at 519. The state personnel board reversed the ALJ, concluding the Fourth Amendment exclusionary rule applied to employment termination proceedings.

The Colorado Supreme Court reversed the state board's decision, stating that "whether the exclusionary rule applies in a particular civil case requires weighing the deterrent benefits of applying the rule against the societal cost of excluding relevant evidence." *Id.* at 520 (citing *United States v. Janis*, 428 U.S. 433, 453–54, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976)). The court in *Ahart* concluded the state board erred "by holding that the exclusionary rule applied without considering the societal costs of applying the rule, such as the safety-sensitive nature of Ahart['s] . . . employment." *Ahart*, 964 P.2d at 523.

■ Thus, whether the exclusionary rule applies in a civil case in Colorado requires the trial court to weigh the deterrent benefits of applying the rule against the societal cost of excluding relevant evidence. *Id.* at 519–20. "There is no 'bright line' to determine when the rule should apply, and courts must apply the *Janis* analytic framework on a case by case basis." *Id.* at 520. The assessment requires a fact-specific analysis and usually involves two considerations: (1) whether the illegal agency conduct is "inter-sovereign" or "intra-sovereign"; and (2) whether the proceedings may be characterized as "quasi-criminal." *Id.* Evidence is not suppressed in a civil proceeding by one sovereign merely because law enforcement agents of another sovereign failed to comply with the proscriptions of the Fourth Amendment. *People v. Harfmann*, 638 P.2d 745, 747 (Colo.1981).

Here, even if we assume the police violated mother's right to be free from unreasonable search and seizure and they were acting as agents of the department, mother was not charged with possession of an unlawful substance. A different entity (the City and County of Denver) was seeking to introduce the evidence at the adjudicatory hearing for a completely difference purpose: to show that mother was not providing the children with a safe and suitable home.

■ The juvenile court also concluded, and we agree, that a dependency and neglect case is not a quasi-criminal proceeding, and that the societal costs of applying the rule would exceed any deterrent effect that exclusion would have on the department or the police in investigating a child welfare issue. *See State in Interest of A.R.*, 982 P.2d at 78–79. Accordingly, we conclude the juvenile court did not err in denying mother's motion to suppress.

### III.

Mother next contends she was denied procedural due process for a number of reasons. We address and reject each of her arguments in turn.

■ Procedural due process requires that a parent be given notice of the proceedings, an opportunity to be heard, and the assistance of legal counsel. These rights are satisfied if the parent appears through counsel and is given the opportunity to present evidence and cross-examine witnesses. *People in Interest of A.E.*, 914 P.2d 534, 538 (Colo.App.1996); *People in Interest of V.M.R.*, 768 P.2d 1268, 1270 (Colo.App.1989).

### A.

■ Mother next contends she was denied due process because the department filed an amended petition based on information obtained after the initial filing, which showed that the children were excessively late to school, that they had many unexcused absences, and that they were not up to date on their immunizations. We disagree.

■ An adjudication of dependency or neglect must be based on existing circumstances and relate to the status of the child at the time of adjudication. *People in Interest of C.T.*, 746 P.2d 56, 58 (Colo.App.1987). However, section 19–3–505(4)(a), C.R.S.2007, provides that "[w]hen it appears that the evidence presented at the hearing discloses facts not alleged in the petition, the court

may proceed immediately to consider the additional or different matters raised by the evidence if the parties consent." Section 19–3–505(4)(c) further provides that "[i]f the amendment results in a substantial departure from the original allegations in the petition, the court shall continue the hearing on the motion of any interested party, or ... on its own motion."

Here, the department filed an amended petition on May 3, 2007, which was only two days before the adjudicatory hearing. Mother filed an objection to it and requested that it be denied and/or stricken. But she did not request a continuance of the adjudicatory hearing, nor has she shown us how the amended petition resulted in "a substantial departure from the original allegations in the petition." § 19–3–505(4)(c). Accordingly, we reject her contention.

### B.

■ We also reject mother's contention that she did not receive all the discovery to which she was entitled. The court required the parties to complete discovery by a certain date and to share information with each other. Mother admitted she never requested documents from the People. Thus, she may not assert error based on her failure to ask for the desired information.

### C.

■ We also conclude mother was accorded a fair adjudicatory hearing. The record does not support her contentions that she asked the court to allow her expert to listen to the police officer's testimony, that the court abused its discretion in admitting eviction notices to impeach her testimony, and that the court unreasonably delayed ruling on her contempt motions.

Mother testified that she did not immunize her daughter for personal reasons. Thus, even if the court erred in denying admission of an immunization waiver that mother signed, we conclude any error was harmless. See C.A.R. 35(e); People in Interest of D.L.C., 70 P.3d 584, 587 (Colo.App.2003).

### D.

We further conclude the juvenile court properly exercised its discretion in monitoring the admission of expert testimony under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); Kumho Tire Co. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); and People v. Shreck, 22 P.3d 68 (Colo.2001).

■ A trial court may admit expert testimony if it will assist the trier of fact to understand the evidence or to determine a fact in issue. CRE 702. The court must find the expert's proposed testimony is relevant and not unfairly prejudicial. M.W., 140 P.3d at 233.

■ Here, the court allowed caseworkers to testify as experts in the area of social work with an emphasis on child protection, based on their training and experience. We conclude the decision to qualify the caseworkers as experts was within the court's discretion, see People in Interest of J.E.B., 854 P.2d 1372, 1375 (Colo.App.1993), and the court properly left the determination of the weight to be given to the experts' testimony to the jury. See People in Interest of E.S., 49 P.3d 1221, 1225 (Colo.App.2002).

### E.

■ Mother next contends the court erred in failing to sanction the People for their delay in providing the dispositional report to her counsel. Again, we disagree.

The People attempted to fax the report to counsel as soon as it was available. However, counsel had filed a motion to withdraw based on a conflict of interest, and there was some confusion whether counsel continued to represent mother. Furthermore, mother was present when the court adopted the proposed treatment plan, and the modifications incorporated some of the objections that she had raised, including increasing her visits with the children, transitioning them to unsupervised visits once it could be shown that she had no contact with her boyfriend, requiring son's father to bring the child to Denver from Pueblo for half of the visits, establishing regular times for mother to call

her son three evenings per week, and coordinating sibling visits.

The court granted mother twenty days in which to file objections to the treatment plan, and explained that it would determine whether a hearing was required. The record shows that mother did not file specific objections to the treatment plan, but only filed proposed questions for cross-examination of the preparer of the dispositional report. Thus, mother was not denied due process by the delay in sending her the dispositional report.

### F.

■ We have reviewed the record thoroughly and further conclude the juvenile court did not abuse its discretion in denying mother's motion to continue the dispositional hearing. *See C.S. v. People,* 83 P.3d 627, 638 (Colo.2004); *People in Interest of A.J.,* 143 P.3d 1143, 1150 (Colo.App.2006).

### G.

■ Mother was granted leave to supplement her petition and the record on appeal. Because she did not do so, she waived any argument that she was denied substantive or procedural due process by the expedited appellate process. *See People in Interest of N.A.T.,* 134 P.3d 535, 539 (Colo.App.2006).

### H.

Mother also contends there should be boundaries established for social workers, stricter standards for discovery, sanctions for misbehavior, and fairer procedures regarding the removal of children. However, she raises concerns that should be addressed by the General Assembly or the Colorado Supreme Court. *See People in Interest of C.M.,* 630 P.2d 593, 596 (Colo.1981).

### IV.

■ Mother next contends the juvenile court erred in denying her motion to apply C.R.C.P. 16.2 to these proceedings. We disagree.

■ C.R.C.P. 16.2 governs case management in certain district court actions under articles 10, 11, and 13 of title 14, not including juvenile matters, and provides that the court *may* order that the rule apply in juvenile matters. The purpose of the rule is to provide a uniform procedure for resolution of all issues in domestic relations cases and to reduce the negative impact of adversarial litigation when possible. *See generally In re Marriage of Woolley,* 25 P.3d 1284 (Colo. App.2001).

Mother moved for disclosure of witnesses and exhibits no later than twenty days before the adjudicatory hearing, and disclosure of rebuttal experts and reports no later than ten days before the hearing. The court rejected her motion at the pretrial conference, concluding that C.R.C.P. 16.2 was not helpful in a dependency and neglect case, and that many of its provisions were inapplicable. However, the court ordered the parties to exchange discovery by April 27, 2007, and to exchange juror notebooks and proposed instructions by May 1, 2007. The People filed a pretrial statement on April 27, 2007, listing the name, address, phone number, and summary of the testimony of each witness they intended to call at the adjudicatory hearing, and mailed a copy to mother's counsel.

We therefore conclude the juvenile court did not err in refusing to apply C.R.C.P. 16.2 to this case.

### V.

■ Mother next contends the juvenile court erred in denying her motions to proceed in forma pauperis. She further contends her counsel was unable to represent her effectively without the record on appeal. We are not persuaded.

■ Mother did not ask for the appointment of counsel before the adjudicatory hearing, but only sought funds for the payment for transcripts and for an expert witness to testify at the hearing. She was not entitled to an expert at the adjudicatory stage of the proceeding. *See People in Interest of S.B.,* 742 P.2d 935, 939 (Colo.App.1987).

■ The determination of indigency is within the trial court's discretion, and before making its decision, the court may order the

production of any documents or evidence it deems necessary. *People in Interest of M.N.*, 950 P.2d 674, 676 (Colo.App.1997).

We conclude the court's denial of mother's first motion, filed April 24, 2007, is supported by the information that she submitted. It showed that she had a monthly income of $2000, which exceeded the eligibility guidelines for costs for indigent persons in civil actions. *See* CJD 98–01 (rev.Mar.2007).

Mother filed another motion for leave to proceed in forma pauperis on June 1, 2007, asserting that her monthly income had decreased to $1025. However, the court was unwilling to rely on her affidavit or testimony because she had filed several motions alleging her indigent status within a short period of time. The court therefore reserved ruling on mother's motion and required her to submit documentation of the name, address, telephone number, and tax identification number of her employer, or a certified affidavit of her income for the last six months and tax returns for the last two years.

Mother filed a supplemental motion on June 15, 2007, asserting that she became unemployed after she requested the required documentation from her employer, and that she had missed work to attend the detention and adjudicatory hearings. But she provided copies of her 2005 and 2006 tax returns and her affidavit verifying that she was unemployed.

On June 27, 2007, the court again denied mother's motion to proceed in forma pauperis. The record shows that mother obtained employment by August 2007, that the court conditionally granted her request for transcripts at state expense, and that on July 2, 2007, the chief judge of this court ordered the preparation of transcripts at state expense. However, mother was required to include the issue of reimbursement in her petition.

■ We therefore next address whether mother should be required to reimburse the state for the costs of her transcripts. We have examined the record and based on mother's June 21, 2007, affidavit asserting that she was unemployed at the time the transcripts were requested, we conclude she

was entitled to transcripts on appeal at state expense. Therefore, we decline to require her to reimburse the state for the cost of such transcripts.

## VI.

■ Mother next contends the juvenile court erred in failing to instruct the jurors they had to agree unanimously on each fact supporting their votes on the eight special verdict questions. We disagree.

The jury unanimously found that both children were dependent and neglected because (1) they lacked proper parental care based on mother's actions or omissions; (2) the environment that she provided was injurious to their welfare; and (3) she failed or refused to provide the children with the necessary subsistence, education, and medical or other care necessary for their health, guidance, and well-being. The only question the jury answered in the negative was whether the children were "without proper parental care through no fault of the mother."

Because mother did not tender such an instruction to the juvenile court, and does not cite any authority supporting her proposed instruction, we reject her contention. *See Westrac, Inc. v. Walker Field,* 812 P.2d 714, 718 (Colo.App.1991).

## VII.

Mother was permitted to supplement her brief after she was provided with transcripts of the relevant hearings, but she failed to do so. We therefore reject her contention that "[t]he full nature and extent of any other of [her] tendered instructions and objections to the instructions initially given are uncertain without the record on appeal."

## VIII.

■ Mother next contends the evidence does not support a finding that the children were dependent and neglected. We disagree.

■ At the adjudicatory hearing, the trial court considers whether the allegations of the petition are supported by a preponderance of the evidence. § 19–3–505(1), (7)(a),

C.R.S.2007; *People in Interest of D.R.W.*, 91 P.3d 453, 461 (Colo.App.2004). In determining whether the evidence is sufficient to sustain a jury verdict of dependency or neglect, we view the record in the light most favorable to the party successful in the trial court, and every inference fairly deducible from the evidence is drawn in favor of the judgment. *People in Interest of D.L.R.*, 638 P.2d 39, 41 (Colo.1981).

■■ A petition is sustained if the allegations of abuse or neglect are supported by a preponderance of the evidence. § 19–3–505(7)(a); *L.G. v. People*, 890 P.2d 647, 654–55 (Colo.1995); *see People in Interest of A.M.D.*, 648 P.2d 625, 641 (Colo.1982). The determination must be based on a consideration of existing circumstances. *C.T.*, 746 P.2d at 58.

The jury here returned verdicts supporting the adjudication of the children as dependent and neglected, and we conclude the record supports the verdicts. There was evidence that the department's initial concerns for the children's safety were based on several factors. These included possible methamphetamine use in the home, the boyfriend's known use and manufacture of that drug, and his intent to return to the home after being released on bond. There was also evidence that a man arrested in mother's home at the time of the welfare check later pled guilty to possession of drug paraphernalia, and that mother's boyfriend tested positive for drugs at least three times in early 2007. There were also concerns for the children's safety, and evidence of their poor school attendance and lack of medical care.

We therefore conclude the evidence supports the adjudication of the children as dependent or neglected.

### IX.

■ Mother next contends the judge who presided in this case erred in failing to recuse herself. We are not persuaded.

■■ "In a civil case, the trial judge's decision whether to disqualify himself or herself is discretionary and will not be reversed unless an abuse of discretion is shown." *Spring Creek Ranchers Ass'n v. McNichols*,

165 P.3d 244, 245 (Colo.2007) (quoting *Zoline v. Telluride Lodge Ass'n*, 732 P.2d 635, 639 (Colo.1987)).

■■ If a judge has a bias or prejudice that will prevent him or her from dealing fairly with a party, the judge must not preside over the case. *People v. Julien*, 47 P.3d 1194, 1197 (Colo.2002). A judge may disqualify himself or herself even though the proper procedural steps have not been taken by a party to the litigation. *Beckord v. Dist. Court*, 698 P.2d 1323, 1328 (Colo.1985).

At the beginning of the adjudicatory hearing and before the jury was brought in for voir dire, mother made an oral motion for disqualification of the judge. The motion was denied.

On appeal, mother lists eleven actions which, according to her, establish inappropriate or prejudicial behavior by the judge. However, the record does not support mother's contention that the judge was biased or unfairly treated her or her counsel. *See In re Marriage of Mann*, 655 P.2d 814, 818 (Colo.1982).

### X.

■ Mother next contends the court erred in refusing to give the jury an adverse inference instruction that, based on the destruction by the police of the drugs found in her house, the jury could infer that if the drugs had been tested, the evidence would have been favorable to her. We disagree.

■ The trial court has the inherent power to provide the jury in a civil case with an adverse inference instruction as a sanction for the spoliation or destruction of evidence. *Aloi v. Union Pac. R.R. Corp.*, 129 P.3d 999, 1002 (Colo.2006). The court is not limited to imposing a sanction only for intentional spoliation, but may impose one based upon mere negligence. *Pfantz v. Kmart Corp.*, 85 P.3d 564, 568–69 (Colo.App.2003).

■ Whether to impose sanctions for the spoliation of evidence, even if the evidence was not subject to a discovery order, is within the court's broad discretion. *Castillo v.*

*Chief Alternative, LLC,* 140 P.3d 234, 236 (Colo.App.2006); *Pfantz,* 85 P.3d at 567.

Here, as part of her motion to suppress evidence of the pipes and white powdery substance found in her home, mother requested an adverse inference instruction based on the destruction of that evidence. She later filed a "Renewed motion to suppress spoiliation [sic] and destroyed evidence" or in the alternative, for an "Adverse jury instruction." The court applied the *Ahart* test discussed above, and ruled that the parties had the ability during the adjudicatory hearing to challenge any opinion or factual statement made by a witness who identified the white powdery substance. The court also permitted mother to present expert testimony regarding the destruction of the substance, even though she had not endorsed such a witness, but the court refused mother's tendered adverse inference jury instruction because it had not been submitted with the other instructions before trial.

The police officer who conducted the welfare check on mother's home testified at the adjudicatory hearing that he found a pipe and a white powdery substance in a sunglasses holder on the dresser in the same bedroom where the pipe with white residue and burn marks had been found on the bed. He was also permitted to express an opinion, based on his training and experience, that the powdery substance was methamphetamine. He explained that the items had been placed in the police property room and had been destroyed when it became apparent that no one was going to be charged with possession of the white powder.

However, this testimony was rebutted by the testimony of mother's expert, who stated that the white powdery substance could not be definitively identified as methamphetamine by visual inspection, because methamphetamine presents itself in so many different forms and colors.

Under these circumstances, we conclude that the juvenile court did not abuse its discretion in denying mother's request for an adverse inference jury instruction. *See W. Fire Truck, Inc. v. Emergency One, Inc.,* 134 P.3d 570, 576 (Colo.App.2006).

The appeal as to the March and April 2007 orders is dismissed, and the judgment is affirmed.

Judge CARPARELLI and Judge BERNARD concur.