24CA1526 Peo in Interest of CWL 03-27-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1526
Delta County District Court No. 24JV30005
Honorable Steven L. Schultz, Judge

---

The People of the State of Colorado,

Petitioner,

In the Interest of C.W.L., a Child-Appellant,

and Concerning G.L.,

Appellant.

---

JUDGMENT VACATED

Division II
Opinion by JUDGE LUM
Fox and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 27, 2025

---

No Appearance for Petitioner

Debra W. Dodd, Counsel for Youth, Berthoud, Colorado, for C.W.L.

Patrick R. Henson, Office of Respondent Parents' Counsel, Justin Twardowski, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant G.L.

¶ 1    In this dependency and neglect action, C.W.L. (the youth) and G.L. (father) appeal the judgment adjudicating the youth dependent and neglected. The Department did not file any briefing in this appeal. We vacate the judgment and, because the juvenile court has dismissed the dependency and neglect action, we decline to remand this case for further proceedings.

## I.    Background

¶ 2    The Delta County Department of Human Services filed a petition in dependency and neglect, alleging that M.L. (mother) left the youth, then sixteen years old, in a home with substance use concerns. Father resided in Texas and made plans to come to Colorado to get the youth but was directed by the Department caseworker to "hold off." At the shelter hearing, the caseworker testified that the Department did not have safety concerns about father and was not aware of any restriction on father's family time with the youth. Nonetheless, the Department requested temporary custody of the youth because father and the youth did "not have a well-established relationship." The juvenile court granted temporary custody of the youth to the Department for placement in foster care.

¶ 3     Beginning with the shelter hearing and at every hearing after, the youth, father, and mother asked for the youth to be placed with father in Texas.

¶ 4     Father denied the allegations in the petition and both father and the youth requested an adjudicatory jury trial. The Department moved for summary judgment.

¶ 5     Three months after the petition was filed, father took the youth to his home in Texas, where the youth remained throughout the rest of the dependency and neglect action. The Department supported this arrangement.

¶ 6     Approximately one week after the youth began living with father in Texas, the juvenile court granted the Department's motion for summary judgment and adjudicated the youth under section 19-3-102(1)(e), C.R.S. 2024. Father and the youth appeal the adjudication.

## II.     The Appeal is Not Moot

¶ 7     We take judicial notice that the juvenile court dismissed the dependency and neglect action five months after adjudicating the youth, while this appeal was pending. *See People v. Sa'ra*, 117 P.3d 51, 56 (Colo. App. 2004) (an appellate court may take judicial notice

of the contents of court records).  The court's order reflects that, at that time, the youth was still residing with father in Texas and there were no safety concerns.

¶ 8     "Because we must always satisfy ourselves that we have jurisdiction to hear an appeal," we may raise potential jurisdictional defects — such as mootness — sua sponte.  *People v. S.X.G.*, 2012 CO 5, ¶ 9.  A case is moot "only if it is shown that there is no possibility that any collateral legal consequences will be imposed" on the basis of the challenged ruling.  *DePriest v. People*, 2021 CO 40, ¶ 9 (quoting *Sibron v. New York*, 392 U.S. 40, 57 (1968)) (describing collateral consequences doctrine); *see People in Interest of C.G.*, 2015 COA 106, ¶¶ 23-30 (applying collateral consequences doctrine to dependency and neglect proceeding).

¶ 9     The adjudication of a child as dependent and neglected carries the possibility of ongoing collateral legal consequences.  For instance, in a future dependency and neglect action, the adjudication of one child can be considered by a juvenile court when determining if another child is dependent or neglected and when determining fitness under the termination criteria.  § 19-3-604(2)(*l*), C.R.S. 2024; *see also People in Interest of S.N.*, 2014 COA

116, ¶ 18 (holding that evidence of a parent's past treatment of other children may be considered to determine "whether it is likely or expected that a parent will fail to provide proper care for another child").

¶ 10      Additionally, an adjudicatory order decreeing a child dependent and neglected overcomes the presumption, established in *Troxel v. Granville*, 530 U.S. 57, 68-69 (2000), that a parent is acting or will act in the child's best interests. *People in Interest of N.G.*, 2012 COA 131, ¶¶ 30-31. Because the court dismissed this case without assessing father's fitness or allocating parenting time, there is at least a risk that the adjudication will deprive father of the benefit of the *Troxel* presumption in a future proceeding allocating parental responsibilities.

### III.    Relevant Law and Standard of Review

¶ 11      Generally, whether a youth is dependent or neglected presents a mixed question of fact and law because it requires the application of the statute to evidentiary facts. *People in Interest of S.N. v. S.N.*, 2014 CO 64, ¶ 21. A youth is dependent and neglected if, as pertinent here, the youth "is homeless, without proper care, or not

domiciled with his or her parent . . . through no fault of such parent." § 19-3-102(1)(e).

¶ 12    The Children's Code does not define "domicile." But Colorado case law has established a specific meaning for the term "domicile": a place where a person intends to reside permanently. *Carlson v. Dist. Ct.*, 180 P.2d 525, 529 (Colo. 1947); *Potter v. State Farm Mut. Auto. Ins. Co.*, 996 P.2d 781, 783-84 (Colo. App. 2000). A child's domicile has long been understood to be that of the parent with whom he or she lives. *Scheer v. Dist. Ct.*, 363 P.2d 1059, 1060-61 (Colo. 1961); *Lyons v. Egan*, 132 P.2d 794, 798 (Colo. 1942).

¶ 13    An adjudication of dependency and neglect must be based on existing circumstances relating to the child's status at the time of adjudication. *People in Interest of A.E.L.*, 181 P.3d 1186, 1192 (Colo. App. 2008).

¶ 14    Summary judgment is available in dependency and neglect cases, but it is a drastic remedy and is only appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *S.N. v. S.N.*, ¶ 15; *see also* C.R.C.P. 56(c). A court must give the nonmoving party all favorable inferences that can be drawn from the record. *S.N. v. S.N.*, ¶ 16.

Even if the material facts are undisputed, summary judgment is only appropriate if "reasonable minds could draw but one inference from them." *Id.* at ¶ 18 (quoting *Gibbons v. Ludlow*, 2013 CO 49, ¶¶ 13, 35).

¶ 15    We review a juvenile court's grant of summary judgment de novo. *People in Interest of M.M.*, 2017 COA 144, ¶ 11.

### IV.    Analysis

¶ 16    The juvenile court found that the youth, mother, and father all admitted that the youth was not living with either parent at the time of the shelter hearing. The court also found that, as of the time of the summary judgment ruling, it was "beyond dispute that [the youth] has been residing in a foster home since the shelter hearing until last week" when he joined father in Texas. The juvenile court concluded that the youth "was not and is not domiciled with either parent and summary judgment on that ground is appropriate here."

¶ 17    Reviewing the facts in the light most favorable to the youth and father, we conclude that summary judgment was not appropriate and that the juvenile court erred by adjudicating the youth dependent and neglected under section 19-3-102(1)(e).

¶ 18    Although it is undisputed that the youth was not living with either parent at the time of the shelter hearing, it is also undisputed that, by the time the juvenile court entered the adjudication, the youth was living with father in Texas.  *See Scheer*, 363 P.2d at 1060-61 (a minor's domicile is that of the parent with whom he lives).  Moreover, the record reflected that the youth wished to reside with father permanently.  *See Potter*, 996 P.2d at 783 (a domicile is that place where a person intends to reside permanently).  Thus, at the very least, there remained genuine issues of material fact that prevented the court from determining as a matter of law that the youth was not domiciled with father *as of the date of adjudication.  See People in Interest of J.G.*, 2016 CO 39, ¶ 38 (noting that adjudications relate to "the status of the child as of the date of the adjudication" (quoting *K.D. v. People*, 139 P.3d 695, 699 (Colo. 2006))) (emphasis omitted).

## V.    Other Issues

¶ 19    Because we reverse the summary judgment, we need not address the youth's other contentions, including that the Department submitted improper affidavits with its motion for summary judgment.

## VI. Disposition

¶ 20 The judgment adjudicating the youth dependent and neglected as to father and the subsequent dispositional order are vacated. *See People in Interest of U.S.*, 121 P.3d 326, 327 (Colo. App. 2005) ("[A]n order adjudicating a child dependent and neglected is necessary to vest the court with dispositional remedies.").

¶ 21 Because the dependency and neglect action has been dismissed, we decline to remand the matter to the juvenile court for further proceedings.

JUDGE FOX and JUDGE GOMEZ concur.