The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
September 4, 2025

**2025COA76**

**No. 25CA0033, *People in Interest of A.F. — Family Law — Dependency and Neglect — Caseworker Expert Testimony; Evidence — Testimony by Experts — Shreck Findings — Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time***

A division of the court of appeals clarifies that caseworker expert testimony in dependency and neglect proceedings is subject to CRE 702 and the analysis outlined in *People v. Shreck*, 22 P.3d 68 (Colo. 2001), including the requirement of specific findings as to admissibility. Thus, when a parent objects to the admissibility of caseworker expert testimony under CRE 702, the juvenile court must, before admitting such testimony, make specific findings regarding (1) the reliability of the principles upon which the testimony is based; (2) the qualifications of the witnesses; (3) the usefulness of the testimony; and (4) the CRE 403 balancing test. Because the juvenile court did not do so in this case and its error

was not harmless, the division reverses the dependency or neglect adjudication and remands the case for a new adjudicatory trial.

Court of Appeals No. 25CA0033
Arapahoe County District Court No. 23JV455
Honorable Shay K. Whitaker, Judge

The People of the State of Colorado,

Appellee,

In the Interest of A.F., a Child,

and Concerning C.A., a/k/a C.K.,

Appellant.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE SCHOCK
Dunn and Brown, JJ., concur

Announced September 4, 2025

Ron Carl, County Attorney, Sarah Simchowitz, Assistant County Attorney, Aurora, Colorado, for Appellee

Sheena Knight, Guardian Ad Litem

Patrick R. Henson, Office of Respondent Parents' Counsel, Chelsea A. Carr, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1    C.A. (mother), a/k/a C.K., appeals the order adjudicating A.F. (the child) dependent or neglected.  She argues, among other things, that the juvenile court erred by admitting expert testimony from three caseworkers without making the findings required by *People v. Shreck*, 22 P.3d 68 (Colo. 2001).  Because we agree, we reverse the adjudication, vacate the corresponding dispositional order, and remand the case for a new adjudicatory trial.

¶ 2    In doing so, we clarify that CRE 702 and *Shreck* — including the required findings — apply to caseworker expert testimony in dependency and neglect proceedings, just as they do to any other expert testimony.  Thus, when a parent properly objects to the admissibility of such testimony, the juvenile court must make findings regarding the reliability of the underlying principles, the qualifications of the witness, the usefulness of the testimony, and the considerations in CRE 403.  *See Shreck*, 22 P.3d at 70.

I.    Background

¶ 3    The Arapahoe County Department of Human Services (the Department) filed a petition in dependency or neglect based on concerns about mother's substance use and erratic behavior toward caseworkers and law enforcement.  The petition alleged that the

child lacked proper parental care and was in an injurious environment. Mother requested an adjudicatory jury trial.

¶ 4 Before trial, mother moved to exclude expert testimony from Department caseworkers as unreliable, unhelpful, and unduly prejudicial. Alternatively, she requested a *Shreck* hearing and specific findings concerning the reliability and relevance of the proposed expert opinions. Among other things, mother argued that the proposed testimony — particularly regarding child safety and the implications of parent distrust of caseworkers — did not rest on the application of objective and reasonably reliable principles.

¶ 5 At a pretrial conference, the juvenile court denied mother's request for a hearing, noting that the challenged testimony did not concern "scientific evidence," as it did in *Shreck*. The court acknowledged that it "would still need to make findings that the evidence [was] reliable, relevant, and not unfairly prejudicial." But it declined to make those findings before trial. Instead, it elected to "defer" that determination until trial when the witnesses would be tendered as experts and mother's counsel could conduct voir dire.

¶ 6 At a second pretrial conference, mother's counsel reminded the court that it had not made a pretrial finding as to the

admissibility of the caseworker expert testimony and that it would need to do so when the caseworkers were offered as experts at trial.

¶ 7 At trial, the Department offered three caseworkers — the intake caseworker, the ongoing caseworker, and a caseworker from the child's prior dependency and neglect action — as experts in "casework with an emphasis in child protection." For each witness, mother's counsel, father's counsel,[1] or both conducted a similar voir dire that included questions about the witness's training, what "objective modality" they used to determine if a child was in danger, and whether their processes had been the subject of published research, testing, or peer review. Mother objected to each witness under CRE 702. The juvenile court overruled mother's objections, each time saying only that it would "qualify [the witness] as an expert in casework with an emphasis in child protection."

¶ 8 The caseworkers testified to their opinions on several matters, including that (1) the child was not or would not be in a safe environment with mother; (2) the child displayed unusual behavior during her removal; (3) father lacked the protective capacity to keep

---

[1] The child's father was also named in the Department's petition, and the adjudicatory trial concerned both mother and father.

the child safe if mother was using substances; and (4) returning the child to her parents' care risked her physical and emotional safety.

¶ 9     The jury returned special verdicts finding that the child's environment was injurious to her welfare and that the child lacked proper parental care through the actions or omissions of mother. *See* § 19-3-102(1)(b), (c), C.R.S. 2025.  The juvenile court entered an order adjudicating the child dependent or neglected.  It then entered a dispositional order adopting a treatment plan for mother.

## II.    Analysis

¶ 10    Mother argues that the juvenile court erred by denying her request for a *Shreck* hearing on the admissibility of the caseworkers' expert testimony and by failing to make the required findings before admitting that testimony.  We conclude that although the court was not necessarily required to hold a hearing, it erred by admitting the testimony without making the specific findings required by CRE 702 and *Shreck*.  Because this error was not harmless, we reverse the adjudication and remand the case to the juvenile court.

### A.    Applicable Law and Standard of Review

¶ 11    The admissibility of expert testimony is governed by CRE 702 and CRE 403.  *Kutzly v. People*, 2019 CO 55, ¶ 10; *Ruibal v. People*,

2018 CO 93, ¶ 12. To be admissible, the testimony must be reliable and relevant, and its probative value must not be "substantially outweighed by any of the countervailing considerations contained in CRE 403." *Kutzly*, ¶ 10; *see Shreck*, 22 P.3d at 70, 77-78.

¶ 12     To ensure "meaningful review of this broadly discretionary decision," a trial court must make "specific findings" as to (1) the reliability of the principles upon which the expert testimony is based; (2) the qualifications of the witnesses; (3) the usefulness of the testimony to the jury; and (4) the balancing required by CRE 403. *Ruibal*, ¶¶ 12, 14; *see Shreck*, 22 P.3d at 70. The court may hold a pretrial evidentiary hearing — often called a *Shreck* hearing — to assist in making these determinations. *Kutzly*, ¶ 11. But it need not hold a hearing if there is sufficient information in the record to make an admissibility determination without one. *Id.*

¶ 13     We review a juvenile court's admission of expert testimony for an abuse of discretion. *People in Interest of M.W.*, 140 P.3d 231, 233 (Colo. App. 2006). When a party objects to expert testimony under CRE 702, a court abuses its discretion by admitting the testimony without specific findings "unless the record not only supports admission of the contested testimony, but virtually

requires it, or if Colorado has already properly accepted the basis of the expert's testimony." *Kutzly*, ¶ 11; *see also Ruibal*, ¶ 14.[2]

B. *Shreck* and CRE 702 Apply to Caseworker Expert Testimony

¶ 14    We first reject the guardian ad litem (GAL) and Department's claim that *Shreck* does not apply to caseworker testimony because such testimony is based on nonscientific "specialized knowledge."

¶ 15    *Shreck* held that the CRE 702 standard that *already* applied to "experience-based specialized knowledge" expert testimony *also* applies to scientific expert testimony. 22 P.3d at 70, 75-77; *see also Brooks v. People*, 975 P.2d 1105, 1114 (Colo. 1999) (applying CRE 702 to "experience-based specialized knowledge"); *Ruibal*, ¶ 12 (noting that *Shreck extended* the supreme court's prior holdings concerning "experience-based specialized knowledge" (quoting *Brooks*, 975 P.2d at 1114)). It then elaborated on how that standard should be applied. *Shreck*, 22 P.3d at 77-79. In doing so, it did not *limit* that application to scientific evidence. *See id.*

---

[2] When no party objects to the expert testimony, a lack of findings does not necessarily render it inadmissible. *People v. Martinez*, 2024 CO 69, ¶ 36. In this case, however, mother raised detailed and specific objections as to each prong of the *Shreck* analysis.

¶ 16     To the contrary, the supreme court has made clear that *Shreck* and CRE 702 "govern[] the admissibility of *all* expert testimony in Colorado, including experience-based expert testimony." *Kutzly*, ¶ 10 (emphasis added); *see also People v. Douglas*, 2015 COA 155, ¶ 75 ("In all cases, even where expertise is based on experience alone, the trial court must maintain its role as a gatekeeper to ensure that 'specialized testimony is reliable, relevant, and helpful to the jury.'" (citation omitted)). That includes expert testimony offered by department of human services caseworkers.

¶ 17     It is true that some of the potential considerations identified in *Shreck* are a better fit for scientific opinions than for the experience-based opinions that caseworkers typically offer. For example, it may not always be possible to tie caseworkers' opinions to a particular "scientific technique" or procedure. *Shreck*, 22 P.3d at 77-78. But *Shreck* expressly accounted for this prospect by "declin[ing] to mandate that a trial court consider any particular set of factors." *Id.* at 77; *see also id.* at 78 (noting that a trial court "need not consider any or all of [the listed] factors" and "may also consider other factors not listed"). Given the flexible and fact-specific nature of the inquiry, certain factors may be inapposite.

*Kutzly*, ¶ 12; *see also Douglas*, ¶ 75 (noting that "experience[]-based testimony may invoke different reliability considerations than scientific testimony" (citation omitted)).  But the "overarching mandate of reliability and relevance" is not.  *Shreck*, 22 P.3d at 78.

¶ 18    That does not mean that *all* caseworker testimony is subject to CRE 702.  Caseworkers may, and often do, testify as fact witnesses regarding their own observations and experiences with the child and the family.  *See People v. Munoz-Casteneda*, 2012 COA 109, ¶ 11 ("[T]he role of a fact witness is to relate, based on personal knowledge, information or events relevant to an issue at trial.").  They may also offer lay opinion testimony within the scope of CRE 701.  Neither of these categories of testimony is subject to CRE 702.

¶ 19    But to the extent a caseworker offers expert opinions based on "scientific, technical, or other specialized knowledge," CRE 702 — including the *Shreck* framework — applies to such testimony.

### C.    CRE 702 Requires Findings

¶ 20    Because CRE 702 applies to caseworker expert testimony, the juvenile court must, upon objection, make specific findings as to the four *Shreck* factors — reliability, qualifications, usefulness, and CRE 403 — before admitting such testimony.  *Ruibal*, ¶ 12.  The

proponent of the expert testimony bears the burden of showing that the testimony satisfies each of those requirements. *See People v. Ramirez*, 155 P.3d 371, 378 (Colo. 2007). Although a juvenile court need not hold an evidentiary hearing if the record is sufficient to support the necessary *Shreck* findings without one, its findings must be explicit. *Ruibal*, ¶ 13; *see also Kutzly*, ¶ 11 ("[A] trial court fails to make a specific finding if such a finding must be inferred.").

¶ 21    First, the juvenile court must determine whether the scientific, technical, or specialized principles underlying the caseworker's testimony are reasonably reliable. *See Core-Mark Midcontinent, Inc. v. Sonitrol Corp.*, 2012 COA 120, ¶ 28. This inquiry must focus on the reliability of the principles underlying the specific opinions offered rather than of casework in the abstract. *See People v. Ornelas-Licano*, 2020 COA 62, ¶ 48 (holding that "extensive experience in shooting through various windshields" did not provide a reliable basis for testimony as to "the relationship between the angle of impact and the shape of the bullet hole"). That means that some caseworker opinions may have a reasonably reliable basis while others may not. *See People v. Martinez*, 2024 CO 69, ¶ 36

9

(noting that "it is often good practice . . . for the trial court to make findings . . . as to . . . the proper scope of the expert's testimony").

¶ 22     As with all expert testimony, this inquiry "contemplates a wide range of considerations that may be pertinent to the evidence at issue." *Shreck*, 22 P.3d at 77. We follow *Shreck*'s lead in declining to limit the juvenile court's analysis to any prescribed set of factors. To the extent a caseworker's opinion is based on a particular technique, tool, or process,[3] the juvenile court may find it helpful to consider some or all of the nonexhaustive list of considerations in *Shreck*, including (1) whether the technique can and has been tested; (2) whether it has been subject to peer review and publication; (3) the known or potential rate of error; and (4) whether the technique has been generally accepted. *See id.* at 77-78. To the extent an opinion is based more generally on a caseworker's experience or training, those factors may not be pertinent. *See*

---

[3] For example, in mother's motion to exclude the expert testimony, she specifically challenged Colorado's "child welfare safety assessment tool," citing a report from the Office of Colorado's Child Protection Ombudsman that the tool "has never been validated," is "used subjectively and inconsistently," and is "unable to yield consistent results." Off. of Colo.'s Child Prot. Ombudsman, *Colorado's Child Welfare System Interim Study Committee Hearing One: June 27, 2023*, at 4, https://perma.cc/24T2-QANQ.

*Douglas*, ¶ 75.  But the court must still determine whether there is a reasonably reliable basis for the caseworker's opinion beyond the caseworker's own assertions.  *See Ornelas-Licano*, ¶¶ 56, 57 (identifying "a number of '[r]ed flags that caution against certifying an expert,'" including "reliance on anecdotal evidence," "lack of testing," and "subjectivity," among others (citation omitted)).

¶ 23    Second, the juvenile court must determine whether the caseworker is "qualified to opine to the matter."  *Core-Mark*, ¶ 28. Again, this inquiry must be tied to the specific proposed testimony: Is the caseworker qualified to offer the particular opinion in question?  *See Kutzly*, ¶ 12.  A witness may be qualified as an expert based on "knowledge, skill, experience, training, or education."  CRE 702; *see also Douglas*, ¶ 71; *People in Interest of A.E.L.*, 181 P.3d 1186, 1193 (Colo. App. 2008) (holding that caseworkers were properly qualified as experts based on their training and experience).  If a witness is sufficiently qualified to offer the proposed opinion, and the juvenile court so finds, any challenges to the witness's qualifications go to the weight of the testimony, not its admissibility.  *See A.E.L.*, 181 P.3d at 1193.

¶ 24    Third, the juvenile court must determine whether the testimony is useful — that is, whether it will "assist the trier of fact to understand the evidence or to determine a fact in issue." CRE 702; *see Ruibal*, ¶ 12. Taking into account both the subject matter of the testimony and the witness offering it, this test boils down to whether a fact finder can "receive appreciable help" on "*this subject . . .* from *this person.*" *People v. Cooper*, 2021 CO 69, ¶ 48 (citation omitted). This is a "common sense inquiry" that asks "whether an untrained lay person would be qualified to determine a particular issue 'intelligently and to the best possible degree without enlightenment from those having a specialized understanding of the subject involved in the dispute.'" *Id.* (citation omitted).

¶ 25    Fourth, the court must find that "the probative value of the evidence would not be substantially outweighed by any of the countervailing considerations enumerated in [CRE 403]," including the danger of unfair prejudice. *Ruibal*, ¶ 12; *see also Shreck*, 22 P.3d at 78 ("The trial court must also issue specific findings as to its consideration under CRE 403 as to whether the probative value of the evidence is substantially outweighed by its prejudicial effect.").

¶ 26    In summarizing these required findings, we do not mean to suggest that the findings must be extensive or take any particular form. *See Kutzly*, ¶¶ 14-16 (concluding that the trial court's findings, "while not ideal," were sufficient to satisfy *Shreck* and CRE 702). Nor must the proceedings be unnecessarily protracted. *See People v. Rector*, 248 P.3d 1196, 1201 (Colo. 2011) (discouraging "unnecessary 'reliability' proceedings" (citation omitted)). The court *may* choose to make the findings at a pretrial evidentiary hearing. *See Ruibal*, ¶ 13. Or it may choose to withhold its ruling until the testimony is offered at a hearing or trial. *See id.* And when the reliability of the underlying principles has "already been determined or is not disputed at all," the court may decide it does not need any further evidence of their reliability. *Id.* The *method* for making the required determinations is within the juvenile court's discretion. *Id.*

¶ 27    We hold only that when a party objects to caseworker expert testimony on the ground that it does not satisfy CRE 702, the juvenile court must make the required *Shreck* findings.

D.    The Juvenile Court Did Not Make the Required Findings

¶ 28    Turning to the facts of this case, we first address and reject mother's contention that the juvenile court erred by denying her

13

request for a *Shreck* hearing.  On the record before us, we cannot say that the juvenile court abused its discretion by declining to hold a pretrial evidentiary hearing.  At the pretrial conference, the court acknowledged the need to make findings but opted to defer those findings to trial when it could consider the caseworkers' testimony, including any voir dire, in context.  That may be an appropriate procedure if the foundation can be laid at trial.  *See Ruibal,* ¶ 13.

¶ 29     But we agree with mother that the juvenile court erred by failing to make the specific findings required by CRE 702.  The extent of the juvenile court's ruling as to each caseworker was simply that the court would "qualify [the caseworker] as an expert in casework with an emphasis in child protection" over mother's objection.  The court did not address the substance of the proffered testimony or make even general findings as to its relevance or reliability.  *See Kutzly,* ¶¶ 11, 15-16.  At best, it found that the caseworkers were qualified to offer *some* expert testimony.  *See Ruibal,* ¶ 15 (holding that "findings as to the qualifications of the expert" are not alone sufficient).  That finding did not address mother's arguments that the testimony was otherwise unreliable, unhelpful, and unfairly prejudicial.  *Cf. Kutzly,* ¶¶ 15-16 (holding

14

that the court made specific findings where it "disagreed with [the defendant's] argument," "incorporated the People's argument for admissibility into its finding," and "expressly found" that the "proposed testimony was relevant" and not unduly prejudicial).

¶ 30    Nor does the record "virtually requir[e]" admission of the testimony or "preclud[e] any reasonable dispute as to the basis" for its admission. *Ruibal,* ¶ 14. The caseworkers' foundational testimony focused primarily on their education, training, and experience. Beyond that, they offered little information about the methods or principles underlying their opinions.

¶ 31    During voir dire, one caseworker could not identify any objective basis for determining whether a child is in danger and acknowledged that her conclusion was based on "subjective" observations. The other two caseworkers identified various "modalities" underlying their opinions but did not describe those modalities, explain why they were reliable, or tie them to their conclusions in this case. *See id.* at ¶ 15; *cf. Shreck,* 22 P.3d at 79-80 (upholding admission of evidence derived from DNA "multiplex testing," despite lack of CRE 702 findings, where record contained evidence of "numerous studies concerning multiplex testing,

15

widespread dissemination of multiplex information, and popular use of multiplex system"). And the Department and GAL do not point to any published case in Colorado that has "already properly accepted the basis of the [caseworkers'] testimony." *Kutzly,* ¶ 11.

¶ 32 The Department and GAL do cite *A.E.L.*, in which a division of this court held that the juvenile court properly exercised its discretion by allowing caseworkers to testify as experts in social work with an emphasis on child protection. 181 P.3d at 1193. But *A.E.L.* did not identify the substance of the caseworkers' opinions, much less consider the reliability of the basis for those opinions. Instead, though not entirely clear, *A.E.L.* appears to have been limited to a challenge to the caseworkers' *qualifications*, i.e., "their training and experience." *Id.* In any event, while we agree that "the decision to qualify . . . caseworkers as experts [is] within the [juvenile] court's discretion," *id.*, that discretion does not obviate — and indeed, reinforces — the need for findings, *see Ruibal,* ¶ 14.

¶ 33 The Department and GAL also argue that mother was able to contest the reliability of the caseworkers' opinions through cross-examination and that her challenges go to the weight of the testimony rather than its admissibility. But CRE 702 requires

expert testimony to "pass through the gate of admissibility" *before* it may be presented to the jury. *Cooper*, ¶ 1. Only after the court properly exercises its gatekeeping function — including by making the required findings — does the question become one of weight. *See People v. Rodriguez-Ortiz*, 2025 COA 61, ¶ 62 (noting that "any shortcomings [in expert testimony] went to the weight of the evidence" because it "satisfied the *Shreck*/CRE 702 threshold of baseline reliability"); *Allen v. Martin*, 203 P.3d 546, 569 (Colo. App. 2008) (holding that an expert's lack of qualifications and lack of a sufficient factual basis are "matters of admissibility, not of weight").

¶ 34    Thus, by failing to make the required CRE 702 findings before admitting the caseworkers' expert testimony over mother's specific objections, the juvenile court abused its discretion.

        E.    The Juvenile Court's Error Was Not Harmless

¶ 35    Finally, we cannot conclude that the juvenile court's error was harmless. *Cf. Ruibal*, ¶ 17 (holding that error in admitting expert testimony did not warrant reversal because it was harmless).

¶ 36    An evidentiary error is harmless if it does not affect the parties' substantial rights. C.R.C.P. 61. An error is not harmless if "it can be said with fair assurance that [the error] substantially influenced

17

the outcome of the case or impaired the basic fairness of the trial itself." *People in Interest of M.V.*, 2018 COA 163, ¶ 66, *overruled on other grounds by, People in Interest of E.A.M. v. D.R.M.*, 2022 CO 42. The question is not "whether there was sufficient evidence to support the verdict without the improperly admitted evidence, but, rather, whether the error substantially influenced the verdict or affected the fairness of the trial proceedings." *Id.* at ¶ 67.

¶ 37     For the reasons we explain above, we have substantial doubt that the record in this case would have been sufficient to support the required findings if the juvenile court had properly applied CRE 702. *Cf. Shreck*, 22 P.3d at 79-82 (applying CRE 702 on appeal and concluding evidence was admissible even though trial court had applied wrong standard). The caseworkers did not provide any objective basis for their opinions, and the record does not otherwise contain any evidence of the principles on which those opinions were based. Nor do the Department or the GAL point to any other case that has held that such opinions satisfy the CRE 702 standard for admissibility. *See id.* at 79. Thus, although our analysis has focused on the juvenile court's failure to make findings, that error

resulted in the admission of expert testimony that, on this record, may not have been admissible.[4]  *See Ruibal*, ¶ 14.

¶ 38     That testimony was central to the Department's case.  All three caseworkers offered expert opinions that, among other things, (1) the child was not safe when she was with mother; (2) the child would not be in a safe environment if she were returned to mother's care; (3) there were concerns about mother's substance use and mental health; and (4) mother's substance abuse impaired her ability to care for the child.  These assertions as to the fundamental factual issues in the case were therefore bestowed not just with *an* "expert's stamp of approval" but with *three* experts' stamps of approval.  *People v. Baker*, 2021 CO 29, ¶ 43 (citation omitted).  Moreover, the caseworkers' testimony was the most direct evidence of the child's environment at the time of the adjudication, making it critical to the jury's determination of whether the child was

---

[4] We stop short of saying that the record in this case *could not* have supported admission of the testimony under CRE 702, if the juvenile court had made the required findings.  And we express no opinion as to the admissibility of such testimony based on a different record.  We conclude only that there is a sufficient likelihood *on this record* that the testimony would have been inadmissible that we cannot say the lack of findings was harmless.

dependent or neglected. *See People in Interest of J.G.*, 2016 CO 39, ¶ 38 (explaining that dependency or neglect adjudications relate only to the status of the child as of the date of the adjudication).

¶ 39    Under these circumstances, the admission of the caseworkers' expert testimony likely had a substantial influence on the jury verdict and undermined the fairness of the proceedings. *See M.V.*, ¶ 67. We therefore must reverse the adjudication. *See id.* at ¶ 89.[5] And because "an order adjudicating a child dependent and neglected is necessary to vest the court with dispositional remedies," we vacate the dispositional order concerning mother as well. *People in Interest of U.S.*, 121 P.3d 326, 327 (Colo. App. 2005).

### III.    Disposition

¶ 40    The judgment adjudicating the child dependent or neglected is reversed as to mother, the dispositional order concerning mother is vacated, and the case is remanded for a new adjudicatory trial. If any party elects to offer expert testimony from caseworkers at the

---

[5] Because we are reversing the adjudication and "the issue is unlikely to arise in precisely the same posture on remand," we do not address mother's argument that the juvenile court erred by admitting evidence of her prior dependency and neglect cases. *People v. Gulyas*, 2022 COA 34, ¶ 29.

new trial, the juvenile court must make the findings required by CRE 702 and *Shreck* in accordance with this opinion.

JUDGE DUNN and JUDGE BROWN concur.