The PEOPLE of the State of
Colorado, Petitioner

v.

Tember Terri RECTOR, Respondent.

No. 09SC708.

Supreme Court of Colorado,
En Banc.

March 14, 2011.

Rehearing Denied April 11, 2011.

John W. Suthers, Attorney General, Susan Eileen Friedman, Assistant Attorney General, Denver, Colorado, Attorneys for Petitioner.

Paul Grant, Parker, Colorado, Attorney for Respondent.

Justice RICE delivered the Opinion of the Court.

A jury convicted respondent, Tember Rector, of felony child abuse. The court of

appeals reversed the conviction, concluding that the trial court abused its discretion by failing to make sufficient findings regarding the reliability and potential prejudice of an expert's testimony and by failing to instruct the jury on the difference between medical and legal child abuse. We granted certiorari to review two of the evidentiary issues.[1] We now reverse the court of appeals.

## I. Facts and Proceedings Below

Tember Rector and her husband were three-year-old T.D.'s foster parents in 2004. T.D. suffered a severe head injury on February 2, 2004, while in Rector's care. Conflicting testimony was presented at trial regarding Rector's whereabouts during the time the injury occurred. Rector testified that she did not witness T.D.'s injury because she was in the shower while T.D. was watching television on the bed in the master bedroom. Rector testified that she heard a crash and jumped out of the shower to find T.D. sitting on the floor with his arm twisted and the contents of the nightstand knocked to the floor. In contrast, the responding paramedic testified that Rector told him she was downstairs when she heard the crash upstairs.

Rector called 9–1–1 and the Castle Rock Fire Department was dispatched to Rector's home. The People presented evidence that Rector waited forty-five minutes before calling for medical assistance. When the paramedics arrived, they found T.D. unconscious, unresponsive, and exhibiting signs of severe head trauma. T.D. was taken to the closest hospital and from there airlifted to Children's Hospital. The treating physicians diagnosed

T.D. with non-accidental head trauma. T.D. suffered life-threatening brain injuries that included retinal hemorrhaging in both eyes and a right-side acute subdural hematoma that caused significant bleeding and swelling in his brain. T.D. underwent emergency neurosurgery at Children's Hospital to alleviate the pressure in his brain and survived the injury. Rector was charged with felony child abuse under section 18–6–401(1)(a) and (7)(a)(III), C.R.S. (2010).[2]

Prior to trial, Rector's counsel submitted a motion entitled Defense Motion to Restrict People's Experts Including Ken Winston from Making Medical Speculation. In that motion, Rector sought to exclude any speculative testimony by the People's experts and asked to have an evidentiary hearing in accordance with *People v. Shreck*, 22 P.3d 68 (Colo.2001). Rector's motion was general in nature and specifically challenged only one expert, Dr. Ken Winston, and only with respect to testimony about shaken-baby syndrome. At a hearing held as a result of this and other motions, Rector argued that she was entitled to a *Shreck* hearing "to determine whether or not . . . [the] diagnosis and opinions that [we]re going to be used at trial by medical experts who were inferring a cause from the evidence . . . [were] reliable." Rector did not, however, point to specific expert testimony that she sought to exclude—other than shaken-baby syndrome testimony—and she argued that she required additional expert discovery. The trial court denied a *Shreck* hearing on shaken-baby syndrome, ordered additional expert discovery, and deemed the request for a *Shreck* hearing premature in light of the requested addition-

---

1. This Court granted review of the following issues:

    (1) Whether the court of appeals acted counter to other published case law in reversing the defendant's convictions based on the erroneous finding that the medical expert opined on an ultimate legal issue, and therefore, usurped the role of the jury.

    (2) Whether the court of appeals acted counter to other published case law in finding that, pursuant to *People v. Shreck*, 22 P.3d 68 (Colo.2001), the district court should have made findings to determine the reliability of the expert's anticipated testimony that the child-victim's injuries were caused by an intentional act of abuse, and whether

the lack of findings constituted reversible or harmless error.

2. The statute provides in relevant part:

    (1)(a) A person commits child abuse if such person causes an injury to a child's life or health, or permits a child to be unreasonably placed in a situation that poses a threat of injury to the child's life or health. . . .

    . . . .

    (7)(a) Where death or injury results, the following shall apply:

    . . . .

    (III) When a person acts knowingly or recklessly and the child abuse results in serious bodily injury to the child, it is a class 3 felony.

§ 18–6–401, C.R.S. (2010).

al expert discovery. Rector did not make another request for a *Shreck* hearing.

Later, at the trial, several of T.D.'s treating physicians testified as medical experts for the People, including Dr. Andrew Sirotnak, a pediatrician and Director of the Child Protection Team, who examined T.D. at Children's Hospital; Dr. Arlene Drack, a pediatric ophthalmologist, who examined T.D. at the emergency room; and Dr. Ken Winston, the neurosurgeon who performed T.D.'s emergency surgery. They each testified to the severity of T.D.'s injuries and opined that the injuries were non-accidental or inflicted and unlikely to have been caused by a fall from a bed.

Prior to Dr. Sirotnak's testimony regarding T.D., the prosecution established Dr. Sirotnak's qualifications and moved for his admission as an expert in the fields of pediatric medicine and child abuse under CRE 702. Rector's counsel requested an opportunity to examine Dr. Sirotnak about his qualifications, but did not inquire about Dr. Sirotnak's qualifications or introduce any evidence to suggest he was not qualified in pediatrics or child abuse. Instead, Rector's counsel asked Dr. Sirotnak about the different definitions of medical child abuse and legal child abuse. Dr. Sirotnak declined to provide a legal definition of child abuse, but acknowledged that the legal definition of child abuse differs from the medical definition. Rector's counsel then stated that he objected to Dr. Sirotnak's qualification as an expert in the field of child abuse, but that he did not object to Dr. Sirotnak "rendering opinions about his un-

derstanding of the medical use of the term child abuse." The trial court admitted Dr. Sirotnak as an expert in pediatrics and child abuse.[3]

Dr. Sirotnak then testified that T.D. suffered a right-sided acute subdural hemorrhage, a shift in the tissue of the brain, and retinal hemorrhages. Dr. Sirotnak testified that his responsibilities at Children's Hospital included evaluating and diagnosing patients when abuse or neglect was suspected. According to Dr. Sirotnak, the medical diagnosis of child physical abuse takes into consideration the presence of a severe traumatic injury with no history of trauma to explain that injury. Dr. Sirotnak stated that the explanation offered by Rector did not account for the severity of T.D.'s injuries. Dr. Sirotnak concluded that, in his expert opinion, within a reasonable degree of medical certainty, T.D.'s injuries were the result of abuse. Rector's counsel made no objection to Dr. Sirotnak's trial testimony.

A jury convicted Rector of felony child abuse. She was sentenced to fifteen years in prison plus five years of mandatory parole. Rector appealed her conviction, arguing, among other issues, that the trial court erred in denying her a *Shreck* hearing related to Dr. Sirotnak's testimony regarding medical child abuse. The court of appeals reversed Rector's conviction and remanded for a new trial, concluding that the trial court abused its discretion in failing to make adequate inquiry or specific findings regarding the reliability and potential prejudice of Dr. Sirotnak's testimony under *Shreck*. The court of

---

**3.** It appears from the record that Dr. Sirotnak was indeed qualified in pediatrics and child abuse. He testified about his education and training as a pediatrician and specifically his focus in the area of child abuse and neglect. Before his testimony in 2005, Dr. Sirotnak completed a fellowship at the University of Colorado School of Medicine and Children's Hospital with the Child Protection Team. He was chief resident of pediatrics and a junior faculty member for the University of Colorado School of Medicine based at Children's Hospital.

At the time of trial in 2005, Dr. Sirotnak testified that his qualifications included board certification in pediatrics and a subspecialty in child abuse. He served as the Director of the Kempe Child Protection Team at the Kempe Children's Center, a national center for the prevention,

treatment and research of child abuse and neglect. He was also the Director of the Child Abuse and Neglect Department at Children's Hospital and the Director of the Child Abuse Team. In those roles, his responsibilities included evaluating children for child abuse, developing care plans for children who had suffered abuse, and setting hospital policy in the area of child abuse and neglect. In addition, Dr. Sirotnak served as an Associate Professor of Pediatrics at the University of Colorado School of Medicine with responsibilities including teaching medical students and residents and overseeing the child abuse fellowship program at Children's Hospital. Dr. Sirotnak's curriculum vitae also listed numerous publications that he authored and/or presented at conferences, and listed a variety of editorial and peer review responsibilities.

appeals further determined that Dr. Sirotnak's testimony that T.D.'s injuries resulted from child abuse was not proper because such testimony concerned the ultimate legal determination of Rector's guilt.[4]

## II. Analysis

### A. Standard of Review

■ We review a trial court's admission of expert testimony for an abuse of discretion and will reverse only when that decision is manifestly erroneous. *People v. Ramirez*, 155 P.3d 371, 380 (Colo.2007). This deference reflects the superior opportunity of the trial judge to assess the competence of the expert and to assess whether the expert's opinion will be helpful to the jury. *Id.; People v. Martinez*, 74 P.3d 316, 322 (Colo.2003).

### B. Admissibility of Expert Testimony Under CRE 702

■ The court of appeals held that the trial court abused its discretion by not making an adequate inquiry and specific findings under *Shreck* about the reliability of the scientific principles employed by Dr. Sirotnak and any potential prejudice. A trial court determines whether expert testimony is reliable and relevant, and thereby admissible, under CRE 702. *Shreck*, 22 P.3d at 70. CRE 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

■ In determining admissibility of expert testimony, a trial court employs a *Shreck* analysis, which requires that: (1) the scientific principles underlying the testimony are reasonably reliable; (2) the expert is qualified to opine on such matters; (3) the expert testimony will be helpful to the jury; and (4) the evidence satisfies CRE 403. *Shreck*, 22 P.3d at 77–79; *see also Martinez*, 74 P.3d at 322.

■ This inquiry should be broad in nature and consider the totality of the circumstances of each specific case. *Shreck*, 22 P.3d at 70, 77. Thus, the trial court may, but is not required to, consider a wide range of factors pertinent to the case at bar including the factors mentioned by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593–94, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), or other courts. *Shreck*, 22 P.3d at 70, 77. This inquiry is balanced by the requirement that the trial court apply its discretionary authority under CRE 403 to ensure that the probative value of the evidence is not substantially outweighed by unfair prejudice, confusion of the issues, undue delay, waste of time, or needless presentation of cumulative evidence. *Id.* at 78–79. When the trial court makes a determination of relevance and reliability under CRE 702, it is required to issue specific findings regarding its analyses. *Id.* at 70, 79.

■ The court of appeals concluded that the trial court should have made a determination under *Shreck* regarding the reliability of child abuse testimony by Dr. Sirotnak. Because Rector did not challenge the admissibility of Dr. Sirotnak's testimony about medical child abuse during the trial,[5] we ex-

---

4. The court of appeals also reviewed the sufficiency of the evidence to support Rector's conviction for child abuse with regard to the elements of mens rea and causation and whether the trial court improperly shifted the burden of proof to the defense. The court of appeals upheld the trial court on each issue. Although Rector argued these issues before this Court, Rector did not seek nor did we grant review of these issues. Thus, they are not properly before this Court.

5. The party challenging the admissibility of the expert testimony does so by requesting a *Shreck* analysis and establishing a basis for the chal-

lenge. A party may request a determination of admissibility of expert testimony before trial or, if necessary, during the course of trial. Trial courts should make every effort to resolve issues involving the admissibility of expert testimony before trial. Nonetheless, a determination regarding the admissibility of an expert's proffered testimony may be made during the course of trial should the need arise. *People v. Whitman*, 205 P.3d 371, 383 (Colo.App.2007).

To the extent Dr. Sirotnak's testimony was a surprise, unanticipated, or otherwise objectionable, Rector could have objected to the testimony at trial. She failed to do so. While Rector objected to the admission of Dr. Sirotnak as an

amine only the pretrial request for a *Shreck* hearing and conclude that the pretrial motion did not give rise to a *Shreck* analysis, much less call for an evidentiary hearing.

[8] As a preliminary matter, Rector argues that *Shreck* requires the trial court to conduct an evidentiary hearing. We disagree. Once a party requests a *Shreck* analysis, a trial court is vested with the discretion to decide whether an evidentiary hearing would aid the court in its *Shreck* analysis. A trial court is not required to conduct an evidentiary hearing under *Shreck* provided it has before it sufficient information to make specific findings under CRE 403 and CRE 702 about the reliability of the scientific principles involved, the expert's qualification to testify to such matters, the helpfulness to the jury, and potential prejudice. *People v. Whitman*, 205 P.3d 371, 383 (Colo.App.2007); *People v. McAfee*, 104 P.3d 226, 229 (Colo. App.2004); *see also Shreck*, 22 P.3d at 77. This discretion comports with the trial court's need to "avoid unnecessary reliability' proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases where cause for questioning the expert's reliability arises." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

▋ Moreover, a trial court may exercise its discretion and determine that a party's request does not give rise to a *Shreck* analysis at all. If a party fails to state a specific challenge pursuant to *Shreck*, a trial court may determine that the request does not warrant a *Shreck* analysis. Likewise, if the request challenges testimony an expert does not intend to offer, a trial court may determine that no *Shreck* inquiry is necessary. Thus, not every motion will necessitate a *Shreck* analysis, much less an evidentiary hearing.

In deciding whether a determination of admissibility requires a *Shreck* inquiry, a trial court must consider the issues as framed

in the motion before it. Though on appeal Rector challenges Dr. Sirotnak's expert testimony on the grounds that the medical diagnosis of child abuse was not scientifically reliable and resulted in prejudice, her motion before the trial court differed dramatically.

Rector framed the motion as one to exclude medical speculation—specifically, speculation regarding shaken-baby syndrome. In the motion, which did not reference Dr. Sirotnak, Rector argued that she believed Dr. Winston would offer an opinion that shaken-baby syndrome was the cause of injury to T.D. Throughout the motion, the reply brief, and the motions hearing, Rector asserted that a hearing was required to establish whether shaken-baby syndrome was the proper diagnosis. Rector did not discuss or object to any anticipated testimony by Dr. Sirotnak, but only discussed the testimony of Dr. Winston and only in the area of shaken-baby syndrome.

At the motions hearing, Rector also argued that "the doctors ha[d] inferred that there [wa]s no accidental trauma and in fact, the conclusion that the doctors reach[ed] support[ed] the bringing of . . . charges [for] the intentional act to abuse the child." Rector now asserts that this statement was sufficient to alert the trial court that she was challenging the medical diagnosis of child abuse, and specifically the testimony of Dr. Sirotnak. We disagree.

▋ A trial court cannot be expected to intuit the challenge brought by the parties. Rather, a party raising a challenge under *Shreck* to the admissibility of expert testimony must sufficiently identify the testimony and/or the witness being challenged. Here, Rector's motion was too general for the trial court to identify a challenge to Dr. Sirotnak's testimony regarding medical child abuse. This is because the only specific testimony challenged in the motion or at the hearing was the testimony of Dr. Winston and then only with respect to shaken-baby syndrome.

At the hearing, the People asserted that there would be no testimony about shaken-

expert in the field of child abuse, she did not object to the testimony he offered regarding

T.D.'s injuries or diagnosis. *See supra* note 3.

baby syndrome from any doctor and that, accordingly, no *Shreck* hearing on shaken-baby syndrome testimony was necessary. The People explained that the experts would testify that T.D.'s injuries were the result of non-accidental trauma because the trauma to T.D.'s head was inconsistent with the story that was given by the defendant. The experts were also expected to testify that there were a number of ways that such a head injury could occur, some accidental and some non-accidental or inflicted. Though one of those possible scenarios included shaken-baby syndrome, the People were not asserting that shaken-baby syndrome was in fact the cause of T.D.'s injuries.

Based on the motion and the arguments, the trial court understood the motion as a combination of a discovery request,[6] which it granted, and a request for a *Shreck* hearing on shaken-baby syndrome, which it denied. It is clear from the record that the trial court declined a *Shreck* hearing on shaken-baby syndrome because it appeared not to be an issue in the case.[7] Additionally, and alternatively, the trial court denied the request for a *Shreck* hearing on shaken-baby syndrome determining that the syndrome is recognized in Colorado as a reliable scientific principle, and that based on the evidence, arguments, and *People v. Martinez*, 74 P.3d 316 (Colo. 2003) (in which this Court examined the admissibility of shaken-baby syndrome testimony),[8] no *Shreck* hearing was required. The trial court then ordered additional expert discovery on the issue of non-accidental trauma. Because Rector requested additional discovery on this issue and argued that a determination of whether the information

was scientific and reliable should follow that discovery, the trial court found the request for a *Shreck* hearing premature. Rector did not submit a subsequent request for a *Shreck* analysis on the reliability or potential prejudice of Dr. Sirotnak's testimony regarding medical child abuse or non-accidental trauma.

Based on the record before us, we hold that the trial court did not abuse its discretion when it denied Rector's motion for a pretrial *Shreck* hearing. Rector chose to fashion the request for a *Shreck* hearing generally and only challenged testimony by Dr. Winston and then only with respect to shaken-baby syndrome. Since the experts did not intend to testify as to shaken-baby syndrome, the trial court properly denied a *Shreck* hearing on the issue. Finally, Rector did not renew her motion or file any new request for a *Shreck* hearing prior to trial. Therefore, we conclude that the trial court did not abuse its discretion. Accordingly, we reverse the court of appeals.

### C. Usurping the Jury's Role—CRE 704

▆▆▆ The court of appeals held that the trial court abused its discretion when it allowed Dr. Sirotnak's testimony regarding his medical diagnosis of child physical abuse to T.D. without instructing the jury on the different definitions of medical and legal child abuse. Again we disagree.

Because Rector made no contemporaneous objection to Dr. Sirotnak's testimony pursuant to CRE 704 or to the jury instructions, she did not preserve the issue for appeal. The general rule is that failure to make a timely and sufficient objection during the trial constitutes a waiver of that ground on

---

6. During the motions hearing, the People explained that the experts who would testify were T.D.'s treating physicians. Their reports made in the course of treating T.D. were produced to Rector and the People expected the experts to testify in concert with those reports. Specifically, the People expected testimony that T.D. suffered a non-accidental trauma to the head. In response, Rector argued that the People had not produced reports stating the experts' opinions about the mechanism of injury or the grounds for their conclusions. Counsel then stated, "I think in order of things, we first ought to get the disclosures that have been requested, and then we ought to have a hearing about whether or not those are scientific and reliable."

7. Lending support to our understanding that the trial court declined a *Shreck* hearing on shaken-baby syndrome because it was not at issue in this case was the trial court's subsequent refusal to allow testimony about shaking as an example of possible causes of injuries similar to those suffered by T.D.

8. The parties debate whether *Martinez* is dispositive of whether shaken-baby syndrome testimony is admissible under CRE 702. Because shaken-baby syndrome was not ultimately at issue in this case, we decline to address the issue.

appeal. *People v. Kruse*, 839 P.2d 1, 3 (Colo. 1992) (citations omitted). Rector waived appellate review of whether Dr. Sirotnak's testimony usurped the jury's role by failing to object to the testimony pursuant to CRE 704. Moreover, Rector did not request a jury instruction on the different definitions of medical and legal child abuse. Thus, whether Dr. Sirotnak's medical child abuse testimony usurped the jury's role should not have been addressed by the court of appeals under an abuse of discretion standard.

■ Nevertheless, an appellate court may address issues not raised below where plain error requires consideration of the issues. *Id.* at 3 (citations omitted). Plain error occurs when, after reviewing the entire record, the reviewing court can say with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Id.* While the court of appeals did not analyze the issue under the plain error standard, we do so here. We examine whether Dr. Sirotnak's testimony usurped the role of the jury and conclude that it did not.

■ The court of appeals held that, when Dr. Sirotnak testified that he diagnosed T.D. with child physical abuse, he opined on the ultimate legal issue and thereby usurped the jury's role as a fact finder. An expert may, however, offer testimony that embraces an ultimate issue to be decided by the trier of fact. CRE 704. We examine a number of factors when determining whether expert testimony usurped the function of the jury, including but not limited to, whether the testimony was clarified on cross-examination, *People v. Prendergast*, 87 P.3d 175, 183 (Colo.App.2003) (considering the fact that an expert's statements were clarified on cross-examination in holding that the expert's testimony did not usurp the jury's role in determining any factual issue), and whether the expert's testimony expressed an opinion of the applicable law or legal standards thereby usurping the function of the court, *Quintana v. City of Westminster*, 8 P.3d 527, 530 (Colo. App.2000) ("Although opinion testimony is not objectionable merely because it embraces an ultimate issue of fact, CRE 704, an expert may not usurp the function of the court by expressing an opinion of the applicable law or legal standards."). We also consider whether a jury was properly instructed on the law and that it may accept or reject the expert's opinion. *People v. Fasy*, 829 P.2d 1314, 1318 (Colo.1992) (holding that the trial court did not abuse its discretion in admitting expert testimony when the jury was properly instructed that it was the jury's decision to determine the weight that the jury should give to the expert's testimony); *People v. Destro*, 215 P.3d 1147, 1152 (Colo.App.2008) (holding that the jury retained its function when properly instructed). An additional factor is whether an expert opined that the defendant committed the crime or that there was a particular likelihood that the defendant committed the crime. *See Masters v. People*, 58 P.3d 979, 992 (Colo.2002).

Here, concern that Dr. Sirotnak's testimony usurped the jury's function is unfounded. The record shows that the distinction between medical and legal child abuse was highlighted by Rector's counsel both during cross-examination and during closing arguments. Dr. Sirotnak declined to state the law on child abuse when asked to do so by Rector's counsel and instead stated that there was a difference between the legal standard for child abuse and the medical diagnosis. Also, the jury was properly instructed on the law and its ability to accept or reject the expert witness testimony. The primary issue for the jury was whether Rector caused an injury to T.D.'s life or health, or permitted him to be unreasonably placed in a situation that posed a threat of injury to his life or health; whether she acted knowingly or recklessly; and whether the abuse resulted in serious bodily injury. *See* § 18–6–401(1)(a), (7)(a). Dr. Sirotnak did not testify as to the primary issue. He did not testify that Rector inflicted T.D.'s injuries nor did he testify that Rector committed the abuse. Also, Dr. Sirotnak declined to speculate about intent when asked by Rector's counsel to do so.

Accordingly, we conclude that, considering the record as a whole, the admission of Dr. Sirotnak's testimony did not rise to the level of plain error.

### III.  Conclusion

The trial court did not abuse its discretion when it declined to hold a *Shreck* hearing. Rector's pretrial *Shreck* motion challenged testimony by Dr. Winston about shaken-baby syndrome—a diagnosis none of the experts intended to offer.  The pretrial motion did not challenge testimony by Dr. Sirotnak or the medical diagnosis of child abuse and no subsequent *Shreck* challenge was raised. Likewise, no contemporaneous objection was made during Dr. Sirotnak's trial testimony to alert the trial court that Rector challenged the expert testimony as to reliability or prejudice.  Whether Dr. Sirotnak's testimony about medical child abuse usurped the role of the jury was not properly before the court of appeals, nor did the admission of the testimony amount to plain error.  Accordingly, we reverse the court of appeals.