22CA1724 Peo v Bauereiss 10-23-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA1724
City and County of Denver District Court No. 21CR5088
Honorable Adam J. Espinosa, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Phillip L. Bauereiss,

Defendant-Appellant.

---

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE TOW
Lum and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 23, 2025

---

Philip J. Weiser, Attorney General, Claire V. Collins, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Kelly A. Corcoran, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Phillip L. Bauereiss, appeals the judgment of conviction entered on a jury verdict finding him guilty of assault in the second degree (restrict breathing) and obstruction of telephone service.  We reverse and remand for a new trial.

## I.    Background

¶ 2    At trial, the prosecution introduced the following evidence.

¶ 3    Bauereiss was engaged in a heated discussion with his wife, Patricia Arce, in their home.  At one point during the discussion, Bauereiss took a dog leash, wrapped it around Arce's neck, and began to pull on both ends of the leash.  Before Bauereiss started to tighten the leash, Arce placed one of her hands between the leash and her neck, thereby preventing her breathing from being impaired.  Arce asked Bauereiss to stop and he did.  Bauereiss took Arce's cell phone out of her hand, and they continued talking.

¶ 4    Eventually, Bauereiss stepped out of the room and Arce attempted to flee through their front doorway.  Bauereiss came up behind Arce, pulled her away from the door, and threw her onto the couch.  Bauereiss then placed a pillow over Arce's face and began smothering her.  Arce flailed her arms and legs in an attempt to get away and after a brief period was able to turn her head sideways to

1

breathe.  Bauereiss removed the pillow from Arce's face, and they continued talking.  After a few minutes, Bauereiss placed the pillow back over Arce's face.  She once again flailed her arms and legs and Bauereiss removed the pillow.

¶ 5      Bauereiss then went to make a call in their basement.  Before he went downstairs, Bauereiss returned Arce's cell phone to her. Arce left the house and went down the street to a grocery store. Arce contacted a friend, Amber Still, and asked for a ride.  Arce also called 911, and two police officers, Officer Kimberly Blanchard and Officer Margaret Barnes, arrived to take Arce's statement.  The officers then went to the couple's home and arrested Bauereiss.

¶ 6      The prosecution charged Bauereiss with two counts (counts one and two) of assault in the second degree (restrict breathing) and one count of obstruction of telephone or telegraph service.  Count one addressed Bauereiss's alleged strangulation of Arce with the dog leash.  Count two addressed Bauereiss's alleged smothering of Arce with the pillow.

¶ 7      During the three-day jury trial, the prosecution called Still to testify about her call with Arce after the alleged assault.  The prosecution also called Michelle Metz as an expert witness in

strangulation.  Metz testified about the mechanics of strangulation, how strangulation differed from smothering, and the potential injuries associated with strangulation.  The prosecution called Barnes as its last witness.  Barnes testified about arriving on the scene to take Arce's statement and the subsequent arrest of Bauereiss at the couple's residence.

¶ 8     A jury found Bauereiss guilty of assault in the second degree on count two and obstruction of telephone service.  The jury acquitted Bauereiss of assault in the second degree on count one.  The district court sentenced Bauereiss to two years of probation on each count, to be served concurrently.

## II.     Admission of Metz's Testimony

¶ 9     Bauereiss argues the trial court erred in admitting Metz's testimony about the potential long-term effects of strangulation.  We agree.

### A.     Standard of Review and Applicable Law

¶ 10     "We review a trial court's evidentiary rulings, including the admission of expert testimony, for an abuse of discretion."  *People v. Martinez,* 2020 COA 141, ¶ 61.  "A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or

3

when it misapplies the law." *Id.* (quoting *People v. Williams*, 2019 COA 32, ¶ 21).

¶ 11      We review preserved, nonconstitutional trial errors for harmless error. *Hagos v. People*, 2012 CO 63, ¶ 12. Under harmless error review, "reversal is required only if the error affects the substantial rights of the parties." *Id.* An error affects a party's substantial rights if it "substantially influenced the verdict or affected the fairness of the trial proceedings." *Id.* (quoting *Tevlin v. People*, 715 P.2d 338, 342 (Colo. 1986)).

¶ 12      CRE 702 governs the admission of expert testimony. "Expert testimony admissible under CRE 702 must be both relevant and reliable." *People v. Davis*, 2012 COA 56, ¶ 42. And prior to the admission of expert testimony, the trial court must conduct a *Shreck* analysis, "which requires that: (1) the scientific principles underlying the testimony are reasonably reliable; (2) the expert is qualified to opine on such matters; (3) the expert testimony will be helpful to the jury; and (4) the evidence satisfies CRE 403." *People v. Rector*, 248 P.3d 1196, 1200 (Colo. 2011); *People v. Shreck*, 22 P.3d 68, 77-79 (Colo. 2001). Relevant evidence may still be

4

excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." CRE 403.

### B. Analysis

#### 1. Preservation

¶ 13    The parties disagree as to whether this issue is preserved. The trial court held a *Shreck* hearing regarding Metz's testimony. During the hearing, defense counsel objected to Metz's satisfaction of the first and third *Shreck* prongs and argued that Metz's testimony was not reliably based on valid scientific principles and her proffered statements were not helpful to the jury because they did not fit the case. At the conclusion of the *Shreck* hearing, the trial court found that Metz's testimony was reasonably reliable, that Metz was qualified to offer such testimony, that her testimony would be helpful to the jury, and that the probative nature of her testimony was not outweighed by unfair prejudice. Because defense counsel alerted the trial court to its concerns regarding the scientific reliability and fit of Metz's testimony, we find this issue is preserved. *People v. Tallent*, 2021 CO 68, ¶ 12 ("To preserve a claim, a party must make an objection 'specific enough to draw the

trial court's attention to the asserted error.'" (quoting *Martinez v. People*, 2015 CO 16, ¶ 14)).

### 2. Potential Injuries Testimony

¶ 14 Bauereiss argues Metz's testimony about potential injuries — both physical and psychological — that could result from strangulation was inadmissible because it did not fit the facts of the case and was therefore unhelpful to the jury. Specifically, Bauereiss argues that "[t]he prosecution failed to identify a proper purpose for the testimony," that "there was no evidence . . . Arce experienced any of these conditions," and that the testimony "did not make . . . Bauereiss's guilt any more or less likely."

¶ 15 The People counter that "Metz distinguished strangulation from smothering," and because Bauereiss was ultimately acquitted of count one — which was the only count involving strangulation — any error in admitting evidence about potential strangulation injuries is moot. The People similarly contend that any error is harmless because "[n]either the prosecutor nor Metz connected the challenged consequences to smothering," and "[i]n this context, the jury was unlikely to understand this testimony as explaining the consequences of smothering."

6

¶ 16    True, Metz initially differentiated the act of strangulation from the act of smothering.  And, at first, Metz referred only to the act of strangulation, as opposed to smothering, when describing potential injuries that could arise in the aftermath of strangulation. However, the prosecutor eliminated this point of separation in her own direct examination.  After Metz described potential injuries that could result from strangulation, the prosecutor asked whether "that was the same with different . . . methods of strangulation, as in ligature, manual, *and smothering.*"  Metz responded that "any mechanism of injury . . . can do the same types of things."  Thus, the prosecutor explicitly tied the effects of strangulation Metz had described to the act of smothering as well.

¶ 17    Because the jury could have heard Metz's testimony to be equally applicable to strangulation and smothering, we conclude that the fact that the jury acquitted Bauereiss on the strangulation count does not render the issue moot.

¶ 18    And the admission of this aspect of Metz's testimony was improper.  Arce did not suffer from any of the potential injuries Metz testified about.  Nor did the prosecution have to prove that any of the supposed injuries occurred as part of the elements for count

one or count two. Thus, Metz presented testimony about unrelated long-term issues that could *potentially* arise from Bauereiss's alleged conduct. Because this evidence did not fit the facts of the case, it did not make any fact of consequence more or less likely. *People v. Martinez*, 74 P.3d 316, 323 (Colo. 2003) ("Fit demands more than simple relevance; it requires that there be a logical relation between the proffered testimony and the factual issues involved in the litigation."). In other words, it was irrelevant.

¶ 19    And, for reasons similar to those underlying our rejection of the People's mootness argument, we cannot say the admission of this evidence was harmless. In particular, Metz's testimony about the potential psychological effects of strangulation, including PTSD, was harmful. Because the prosecution offered no evidence that Arce suffered from PTSD or any other psychological issue in the aftermath of the alleged assaults, this evidence could only serve to create sympathy for Arce and a speculative concern in the jury's collective mind about future risks Arce *might* face. Thus, we cannot say there is no reasonable probability that this improper evidence contributed to the verdict. *See People v. Yachik*, 2020 COA 100,

¶ 42 (holding the prosecutor's use of evidence to appeal to the jurors' emotions was not harmless).

¶ 20 Bauereiss raises several other issues involving claimed evidentiary errors and prosecutorial misconduct. But we do not know if, or in what context, these matters would arise on remand. Accordingly, we decline to address them.

### III. Disposition

¶ 21 The judgment of conviction is reversed, and the case is remanded for a new trial.

JUDGE LUM and JUDGE MOULTRIE concur.